CARLTON, J.,
 

 for the Court.
 

 ¶ 1. On March 26, 2008, the chancellor granted Walter and Dolores Elliot a divorce on the ground of Walter’s uncon-doned adultery pursuant to Mississippi Code Annotated section 93-5-1 (Supp. 2008). On appeal, Walter contends that the chancellor erred when she awarded Dolores $500 per month in permanent alimony. We find no error and affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. Dolores and Walter were married on February 12, 1982. On February 9, 2007, Walter filed a complaint for divorce against Dolores. A trial was held on February 28, 2008. Dolores was granted a divorce from Walter on the ground of Walter’s uncondoned adultery. On appeal, Walter does not dispute that the chancellor equitably distributed the couple’s marital assets, nor does he dispute that Dolores was properly awarded custody of the couple’s minor child. Walter only contends that the chancellor erred in awarding Dolores $500 a month in permanent alimony.
 

 ¶ 3. In the hearing at which the chancellor ruled on the parties’ divorce case, the chancellor found the following facts: (1) Walter’s monthly income was approximately $3,900; (2) Dolores’s monthly income was approximately $1,000; (3) Walter’s income-earning capacity was three times that of Dolores’s income-earning capacity; (4) neither Dolores nor Walter had completed high school, but both had obtained GEDs; (5) Dolores was a homemaker for the majority of the couple’s marriage; (6) both Dolores and Walter suffered some health problems, but none that were completely debilitating; (7) Dolores and Walter were married for twenty-six years; (8) Dolores was granted physical custody of the couple’s minor child, a full-time college student; (9) both Dolores and Walter were in their mid to late fifties; (10) Walter’s uncondoned adultery ended the marriage; (11) Walter had dissipated marital assets by cashing in a 401(k) without giving Dolores any of the proceeds; and (12) Walter had dissipated marital assets on his two girlfriends in buying them meals, drinks, and gifts.
 

 ¶ 4. Additionally, Dolores testified that her net monthly income was approximately $950 while her total monthly expenses amounted to $2,100. Dolores testified that when Walter stopped giving her money in September or October 2007- — approximately six months after Walter filed for divorce and five months before the couple’s divorce trial — she was left in dire financial straits. Dolores told the chancellor that she wanted the marital home so she and her daughter would have a place to live.
 

 ¶ 5. In applying the above facts to the issue of equitable distribution of the marital property pursuant to
 
 Ferguson v. Ferguson,
 
 639 So.2d 921, 928 (Miss.1994), the chancellor awarded Walter the following marital assets: (1) his state retirement; (2) proceeds from the 401(k) that he
 
 *786
 
 cashed in; (8) a 1982 Chevrolet truck; (4) items he had removed from the marital home, including his tools; and (5) forty-percent equity in the marital home.
 

 ¶ 6. The chancellor awarded the following marital assets to Dolores: (1) her retirement account; (2) a 1995 Buick; (3) any and all remaining household furnishings that Walter had not taken; (4) exclusive use and possession of the marital home for her lifetime, unless she remarried, moved out of the home, or became romantically involved with a man who moved into the marital home with her; and (5) sixty-percent equity in the marital home.
 

 WHETHER THE CHANCELLOR ERRED IN AWARDING DOLORES $500 A MONTH IN PERMANENT ALIMONY.
 

 ¶ 7. Alimony awards are within a chancellor’s discretion, and we will not reverse an award of alimony on appeal unless the chancellor abused her discretion in her fact-finding or misapplied the law.
 
 Armstrong v. Armstrong,
 
 618 So.2d 1278, 1280 (Miss.1993). “To determine the amount of permanent alimony, the chancellor must consider twelve factors identified in
 
 Armstrong.” Curtis v. Curtis,
 
 796 So.2d 1044, 1051 (¶ 33) (Miss.Ct.App.2001). The
 
 Armstrong
 
 factors are listed below:
 

 1. The income and expenses of the parties;
 

 2. The health and earning capacities of the parties;
 

 3. The needs of each party;
 

 4. The obligations and assets of each party;
 

 5. The length of the marriage;
 

 6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;
 

 7. The age of the parties;
 

 8. The standard of living of the parties, both during the marriage and at the time of the support determination;
 

 9. The tax consequences of the spousal support order;
 

 10. Fault or misconduct;
 

 11. Wasteful dissipation of assets by either party; or
 

 12. Any other factor deemed by the court to be “just and equitable” in connection with the setting of spousal support.
 

 Armstrong,
 
 618 So.2d at 1280.
 

 ¶ 8. One of the goals of equitable distribution is to alleviate the need for alimony.
 
 Ferguson,
 
 639 So.2d at 929. Accordingly, alimony should be considered only after the equitable division of marital property.
 
 See Marsh v. Marsh,
 
 868 So.2d 394, 398 (¶ 16) (Miss.Ct.App.2004). “[T]he purpose of alimony is not punitive, but instead, is designed to assist the spouse in meeting his or her reasonable needs while transitioning into a new life.”
 
 Holley v. Holley,
 
 892 So.2d 183, 185 (¶ 7) (Miss.2004) (citation omitted). Generally, permanent alimony should be considered if one spouse is left with a deficit after the division of marital assets.
 
 See Kilpatrick v. Kilpatrick,
 
 732 So.2d 876, 880 (¶ 16) (Miss.1999) (citing
 
 Johnson v. Johnson,
 
 650 So.2d 1281, 1287 (Miss.1994)).
 

 ¶ 9. Walter argues on appeal that Dolores should not have been awarded $500 a month in alimony because: (1) Dolores has no house or car payment as both items are paid off; (2) the minor child contributes to her own support in Dolores’s home through the child’s wages and tips from her part-time job at Sonic; (3) Dolores does not live extravagantly; (4) Dolores did not know how Walter spent the funds he withdrew from his 401(k); (5) Dolores received a $2,000 tax refund which would increase her monthly income; (6)
 
 *787
 
 Dolores receives $350 per month in child support for the parties’ minor child; (7) Dolores will inherit one quarter of her father’s estate upon his death; and (8) Dolores has the ability to earn wages. Despite Walter’s list of factual allegations as to why Dolores should not receive $500 a month in permanent alimony, Walter fails to cite to any authority in support of his position.
 

 ¶ 10. In turning to the chancellor’s decision, we note that the chancellor discussed in her order the matter of “equalizing” Walter’s and Dolores’s incomes by granting Dolores $500 per month in permanent alimony. Despite the chancellor’s incongruous use of the term “equalizing” as it applied to equitable distribution of the couple’s marital property and to alimony, we find that the chancellor’s
 
 Armstrong
 
 analysis was on point and that she based her decision upon substantial evidence in the record. Under our standard of review, “[wjhenever a chancellor’s decision is based on credible evidence, this Court will affirm that decision.”
 
 C.A.M.F. v. J.B.M.,
 
 972 So.2d 656, 666-67 (¶44) (Miss.Ct.App.2007) (citations omitted). “Or differently stated, this Court may reverse a chancellor’s findings of fact only when there is ‘no substantial evidence in the record’ justifying his [or her] findings.”
 
 Id.
 
 (citations omitted).
 

 ¶ 11. Here, pursuant to
 
 Armstrong,
 
 the chancellor considered in detail each party’s respective incomes, income-earning capacities, needs, assets, obligations, ages, the length of the marriage, Dolores’s custody of the couple’s minor child, Walter’s uncon-doned adultery, and Walter’s dissipation of marital assets when she awarded Dolores $500 a month in permanent alimony.
 
 See Holley,
 
 892 So.2d at 185 (¶ 7). In essence, the chancellor found that Dolores suffered a deficit in her ability to meet her reasonable living expenses after the equitable division of the marital property, and to correct this deficit, the chancellor awarded Dolores $500 a month in permanent alimony.
 
 See id.; Kilpatrick,
 
 732 So.2d at 880 (¶ 16). Based on the record before us, we find that the chancellor’s judgment was supported by substantial evidence-.
 
 See C.A.M.F.,
 
 972 So.2d at 666-67 (¶44). Therefore, we find no error and affirm.
 

 ¶ 12. THE JUDGMENT OF THE DE-SOTO COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR.